1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ASKIA S. ASHANTI,

11              Plaintiff,                    No. CIV S-03-0474 LKK GGH P

12        vs.

13   CA. DEPT. OF CORRECTIONS, et al.,

14

                Defendants.              ORDER
15   _____/

16   Introduction

17              Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

18   1983.  Pending[1] before the court are: 1) plaintiff's motion to compel discovery, filed on

19   September 14, 2005; and 2) plaintiff's motion to compel further discovery and for sanctions,

20   filed on December 12, 2005, to which defendants filed their opposition, after which plaintiff filed

21   a reply.

22   Plaintiff's Remaining Allegations

23              Plaintiff's proposed second and third amended complaints have been stricken.

24   _____

25        [1] The parties' motion and cross-motion for summary judgment, submitted on May 26,
     2006, will be adjudicated in Findings and Recommendations, to be filed separately and at a later
26   date.

                                           1

1  See Orders, filed on August 26, 2004 and June 10, 2005.  The first amended complaint has been

2  modified by Orders, filed on October 1, 2004, and on May 25, 2005.  This matter has proceeded

3  against defendants Woodford and Carey solely in their official capacities, for prospective relief

4  only.  Defendant Woodford is a former Director of the formerly named California Department of

5  Corrections (CDC); she succeeded Roderick Hickman as Agency Secretary of California

6  Department of Corrections and Rehabilitation (CDCR) as an interim appointment.   The court

7  now substitutes in, under Fed. R. Civ. P. 25(d), James Tilton, the current Acting Secretary of the

8  California Department of Corrections and Rehabilitation (CDCR) as defendant in place of

9  defendant Woodford and/or Hickman.  Thus, this matter now proceeds for prospective injunctive

10  relief only against defendants Tilton and Carey, in their official capacities.  Plaintiff alleges

11  violations of his rights under the First, Eighth and Fourteenth Amendments.

12         Plaintiff was previously incarcerated in 1988 under the name Lorenzo

13  Cunningham.  FAC, p. 2.[2]  He was released on parole in 1994, and changed his name legally to

14  Askia Ashanti in September 1994.  Id., & Exh. E-7.   In July, 1995, plaintiff was arrested for his

15  current commitment offense and in April 1996 committed to state prison under the name Askia

16  Ashanti.  FAC, p. 2.  A California Department of Corrections (CDC) prison official refused to

17  change plaintiff's name on his prison records.  Id.  While at Pleasant Valley State Prison, plaintiff

18  filed a grievance which was initially granted at the director's level in May, 1997, directing that

19  plaintiff's name on prison and medical files, mail and visiting files and I.D. cards all be changed

20  to Ashanti.  Id.  In June, 1997, the decision was amended to a partial grant, allowing plaintiff to

21  use Ashanti/Cunningham in the visiting/mail room, but requiring his former name, Cunningham,

22  to be used on all other prison records.  Id.

23         Plaintiff filed a federal lawsuit, which he voluntarily dismissed in order to exhaust

24  administrative remedies on new claims.  FAC, p. 3.  Upon his refiling the grievance, it was

25  _____

26  [2] The factual background and claims made by plaintiff have been previously set forth by the court.

2

1   initially filed/logged, but was later "illegally dismissed" on the grounds that it was a duplicate

2   grievance.  Id., p. 3.  However, plaintiff's grievance based his new claim on a statute not in

3   existence at the time that he filed his earlier grievance, the Religious Land Use and

4   Institutionalized Persons Act of 2000 (RLUIPA), codified at 42 U.S.C. § 2000cc.  Id.  Thereafter,

5   plaintiff filed a new federal lawsuit.[3]

6            Plaintiff claims that his rights as a Muslim under the First Amendment free

7   exercise of religion clause have been violated by defendants not using plaintiff's new, legally

8   changed name on all his prison records.  FAC, p. 5.  The court has also construed this claim as

9   arising under RLUIPA.  Id; see Order & Findings and Recommendations, p. 4, filed on August

10   26, 2004, the Findings and Recommendations adopted by Order, filed on October 1, 2004.

11            Plaintiff also claims that defendants have violated his rights under the Eighth

12   Amendment, subjecting him to cruel and unusual punishment, by forcing him to use a name

13   which is a "badge of slavery."  FAC, p. 6.

14            Plaintiff also claims that defendants have violated his right to due process by

15   refusing to use his legally changed name on his prison records and by continuing to use his

16   former name when he is currently incarcerated for an offense for which he was committed under

17   his new name.  FAC, pp. 7-8.

18            Finally, plaintiff alleges that his right to equal protection has been violated by

19   defendants because other prisoners have been allowed to use "second names" on their "second

20   commitments."  FAC, p. 9.

21   Motions to Compel

22            Plaintiff's initial motion, which he brought seeking defendants' responses to his

23   discovery requests will be denied as moot because in his subsequent motion, it is plain that

24   _____

25   [3] Although plaintiff does not identify this case, court records reveal it to be Ashanti v.
     California Department of Corrections, et al., No. CIV S-02-0475 LKK DAD P. (Judicial notice
     may be taken of court records.  Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D.
26   Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126 (1981)).

1   defendants served him with discovery responses.  In his second motion, plaintiff seeks further

2   discovery and sanctions.  Plaintiff, in his reply, has waived his argument with regard to the issue

3   he raises concerning the failure of defendants to supply signatures to discovery responses, as

4   those have been filed with defendants' opposition to plaintiff's motion, so no more need be said

5   on that point.

6          Plaintiff contends that most of the discovery responses served by defendants

7   Hickman (for whose substitution in future filings, the court has now recognized defendant Tilton

8   as the properly named official) and Carey are incomplete, evasive or false.  He also argues that he

9   received two different versions of responses to the same set of requests for production of

10  documents that he propounded upon defendant Carey, both of which he includes as Exhibit

11  (Exh.) A to his motion.  As to the responses provided on behalf of defendant Carey, plaintiff

12  contends that in one version, for example, as to some requests, a written notation appears

13  indicating that the response is to be produced from plaintiff's central file, but in the second

14  version no production is provided.  He contends that as to some requests the defendant tells

15  counsel not to produce any material, with the second set of responses relying on a claim of

16  confidentiality or privilege.

17         Defendants, in opposition, contend that the one set of responses by defendant

18  Carey to plaintiff's  first set of requests for production were the result of "minor clerical errors,"

19  that certain documents were inadvertently produced and are privileged material, on which

20  plaintiff should not be allowed to rely.  Opposition (Opp.), pp. 2-5.  Among the documents

21  produced that defendants contend were privileged are, in addition to the draft of plaintiff's

22  requests for with handwritten notes, which plaintiff has included as Exhibit A-1 through A-8, are:

23  1) Document Request Form dated October 7, 2005, from Michelle of the Attorney General's

24  Office to the litigation coordinator at CDCR's Sierra Conservation Center; 2) Fax cover sheet

25  dated October 7, 2005 from Michelle of the Attorney General's Office to the litigation

26  coordinator at CDCR's Sierra Conservation Center; 3) Fax cover sheet date September 30, 2005

1  from Michelle of the Attorney General's Office to the litigation coordinator at CDCR's Sierra

2  Conservation Center; 4) Document Request Form dated September 30, 2005 from Michelle of

3  the Attorney General's Office to the litigation coordinator at CDCR's Sierra Conservation

4  Center. Defendants argue that plaintiff should not be allowed to rely on the draft response

5  containing notes, not only because they contend that they are protected by attorney client

6  privilege and as work product but also because plaintiff is speculating as to who wrote the notes

7  when he contends that it was the defendant who either wrote, or even read, the notes. Defendants

8  also seek the return of the original material. Plaintiff replies that the originals were filed with the

9  court and that he does not have any.

10         Although the attorney-client privilege is well established and honored in our legal

11  tradition, counsel (and, at times, courts) sometimes forget that the privilege is a means to an end,

12  and not an end in itself. The end goal of our legal system is to provide a fair, just, accurate, and

13  efficient dispute resolution process. While the attorney-client privilege assists in the obtaining of

14  that goal by permitting clients to candidly discuss their case with their legal representative

15  without fear that every confidence will be later revealed, the privilege also detracts from the goal

16  in that it hides from sight truthful information that is needed to accurately decide the dispute. As

17  such the privilege has been characterized as "imped[ing] full and free discovery of the truth," and

18  it is *narrowly* construed in federal courts. Weil v. Investment/Indicators, Research and

19  Management, 647 F.2d 18, 24 (9th Cir. 1981). Therefore, in balancing the benefits of the

20  privilege versus its costs, the attorney-client privilege is subject to waiver when not properly

21  asserted. Eureka v. Hartford Ins., 136 F.R.D. 179, 182 (n.5) (E.D. Cal. 1991), supplies the

22  analysis for determining when a waiver occurs:

23         This court believes that an analysis of whether a waiver of
               important privileges has been effected should be analyzed under
24         the inadvertent waiver standard on a case-by-case basis. [FN10
               omitted] The modern trend on waiver of the attorney-client
25         privilege favors a case-by-case determination of waiver based on a
               consideration of all the circumstances. See, e.g., Hartford Fire Ins.
26         Co. v. Garvey, 109 F.R.D. 323, 329 (N.D.Cal.1985); Permian

1    Corp. v. United States, 665 F.2d 1214 (D.C.Cir.1981); See, also,
     Davis v. Fendler, 650 F.2d at 1160 (in assessing the validity of a
2    claim of privilege, the court should consider the context in which
     such a claim is made).
3                                    ***
     Under federal law, a waiver of the attorney-client privilege may be
4    effected by implication. Therefore, even the inadvertent disclosure
     of a privileged communication does not prevent the occurrence of a
5    waiver. See, e.g., Weil, 647 F.2d at 24. In considering all the
     circumstances that may justify a finding of inadvertent waiver, the
6    Hartford Fire Ins. Co. court examined the following elements: (1)
     the reasonableness of the precautions to prevent inadvertent
7    disclosure; (2) the time taken to rectify the error; (3) the scope of
     discovery; (4) the extent of the disclosure; and (5) the "overriding
8    issue of fairness." Hartford Fire Ins., 109 F.R.D. at 332, citing
     Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 104 F.R.D.
9    103, 105 (S.D.N.Y.1985).

10   Eureka, 136 F.R.D. at 183-184.

11           Here defendants do not provide even a declaration attesting to how the documents

12   noted above fall within the attorney client privilege, failing altogether on that point to make the

13   case for that privilege.  On the other hand, from the document that has been submitted by

14   plaintiff, it is fairly evident that that document, as well as the others identified by defendants fall

15   within the scope of the work product doctrine.

16           The work product doctrine provides qualified immunity from
     discovery to materials prepared by an attorney (or his agent) in
17   anticipation of litigation for use at trial.  The modern genesis of the
     doctrine is the Supreme Court's opinion in Hickman v. Taylor, in
18   which the Court rejected "'an attempt, without purported necessity
     of justification, to secure written statements, private memoranda
19   and personal recollections prepared or formed by an adverse
     party's counsel in the course of his legal duties.'" Hickman v.
20   Taylor, 329 U.S. 495, 67 S. Ct. 385 [] (1947)(quoted in Sporck v.
     Peil, 759 F.2d 312 (3rd Cir. 1985).  In holding that the attorney's
21   work product was immune from discovery, the Court reasoned that
     an attorney's expectation that his work will remain private is
22   essential to the proper preparation of the client's case, and that
     without such protection much of what is now put down in writing
23   would remain unwritten.  An attorney's thoughts, heretofore
     inviolate, would not be his own.  Inefficiency, unfairness, and
24   sharp practices would inevitably develop in the giving of legal
     advice and the preparation of cases for trial.  The effect on the legal
25   profession would be demoralizing.  And the interests of the clients
     and the cause of justice would be poorly served.
26   \\\\\

                                        6

In re Gabapentin Patent Litigation, 214 F.R.D. 178, 182-183 (2003).  Fed. R. Civ. P. 26(b)(3)
provides that a party may have discovery of otherwise discoverable material, "prepared in
anticipation of litigation...only upon a showing that the party seeking discovery has substantial
need of the materials in the preparation of the party's case and that the party is unable without
undue hardship to obtain the substantial equivalent of the materials by other means."

Cases set forth the differing purposes of the attorney-client privilege from those of
the work product doctrine:

> The purpose of the attorney-client privilege is to encourage full
> disclosure of information between an attorney and his client by
> guarantying [sic] the inviolability of their confidential
> communications.  The "work product of the attorney," on the other
> hand is accorded protection for the purpose of preserving our
> adversary system of litigation by assuring an attorney that his
> private files shall, except in unusual circumstances, remain free
> from the encroachments of opposing counsel.

Ceco Steel Products Corp. v. H.K. Porter, Inc., 31 F.R.D. 142, 143 (N.D. Ill. 1962), cited, inter
alia, in Transamerica Computer Co., Inc., v. International Business Machines, 573 F.2d 646, 648
n. 1 (9th Cir. 1978).  Waiver of the attorney client privilege, because of their differing purposes,
therefore does not necessarily affect the work product protection.  Ceco Steel, supra, at 143.  See
also, Vilastor-Kent Theatre Corp. v. Brandt, 19 F.R.D. 522, 524 (S.D.N.Y. 1956).  Some courts
find the waiver of the attorney-client privilege to be altogether "irrelevant to the guiding
considerations affording a lawyer a measure of protection against the intrusion of an adversary
into his files."  Connecticut Mut. Life Ins. Co. v. Shields, 16 F.R.D. 5, 8 (S.D.N.Y. 1954).
While the work product protection does not make an attorney's files inviolate where production
of relevant, non-privileged facts are "essential to the preparation of one's case...." id., quoting
Hickman v. Taylor, supra, at 511, 67 S. Ct. at 394, such a situation is not evident in the case of
plaintiff's having been the unintended recipient of defendant's counsel's draft of discovery
responses and of any of the communications from the Attorney-General's Office to the prison
litigation coordinator to prepare discovery responses.  If plaintiff does not have the original

1  documents, as he avers, he must return any copies of them to defendant's counsel that are within

2  his custody, possession or control.  Regardless, he may not rely on the material inadvertently

3  disclosed to him.  The court will not address any of plaintiff's discovery dispute that is predicated

4  on the differences in inadvertent response or production with respect to the draft of responses

5  with handwritten notes and the responses and/or production that defendants served intentionally.

6        The scope of discovery under Fed. R. Civ. P. 26(b)(1) is broad.  Discovery may be

7  obtained as to any unprivileged matter "relevant to the claim or defense of any party...."  Id.

8  Discovery may be sought of relevant information not admissible at trial "if the discovery appears

9  reasonably calculated to lead to the discovery of admissible evidence."  Id.  The court, however,

10  may limit discovery if it "....is unreasonably cumulative or duplicative," or can be obtained from

11  another source "that is more convenient, less burdensome, or less expensive"; or if the party who

12  seeks discovery "has had ample opportunity by discovery ...to obtain the information sought"; or

13  if the proposed discovery is overly burdensome.  Fed. R. Civ. P. 26(b)(2)(i)(ii) and (iii).

14        To the extent that plaintiff seeks production in response to his requests for

15  production of documents nos. 6-9 and 18, based on defendant Carey's objection on the ground of

16  confidentiality, the court denies the motion because the court finds that his requests 6-9 are

17  properly objected to on the separate basis of being overly or unduly burdensome; as to request

18  no. 18, the court agrees with defendant Carey that the request is if not unintelligible, certainly

19  irrelevant.  In request no. 6, plaintiff asks for production of the "(CDC-

20  Headquarters/Sacramento) statistical data sheet over a 10-year period (1995-2005) listing all of

21  CDC prisons and the male/female populations in each prison."  On the face of it, this request

22  appears to be, as defendants objected, ambiguous and unduly burdensome.  It appears as well to

23  be overly broad and wholly irrelevant.  Moreover, defendants maintain that they have found no

24  documents responsive to plaintiff's request.  Opp., p. 7.  The court cannot compel production of

25  documents not within the possession, custody or control of a responding party.  In request no. 7,

26  plaintiff asks defendants to produce all CDC third level grievances by male and female prisoners

8

1 seeking legal name changes on their CDC prison files/records for the period of 10 years from

2 1995 to 2005.  In request no. 8, plaintiff asks defendants to produce all third level decisions over

3 the ten-year period from 1995 to 2005, denying inmate grievances seeking to have legal name

4 changes on CDC files/records.  In request no. 9, plaintiff seeks production of all director's level

5 decisions granting inmate grievances for legal name changes on CDC files and records.  Request

6 nos. 7-9 ask the defendants to cull through a huge amount of data and grievances covering a

7 period of ten years to isolate the ones responsive to his requests, assuming there are any.

8 Plaintiff seeks to show with these documents that no disruption occurs to the prison system when

9 name changes are made (motion, pp. 5-6), but defendants argue that they do not contend that

10 plaintiff is unable to have his name change on all prison records because it will cause disruption

11 in the prison system.  Opp., pp. 8-9.  Defendants should not be tasked with these onerous

12 requests.  Plaintiff could have fashioned requests that were more narrowly tailored as to time or

13 place, but the time for doing so has passed.

14         Request no. 18 apparently asks defendant Carey to produce the costs of his first

15 commitment per CDC and the charges for incarcerating him during his second period of

16 imprisonment.   Although the court is not particularly persuaded by defendant's objection that the

17 information is protected by privacy rights and state statutes, the utter irrelevance of the request

18 such that it is not reasonably calculated to lead to the discovery of admissible evidence is the

19 basis for the court's denial of the motion as to this request.

20         Plaintiff takes further issue with defendants Carey's and Hickman's responses to

21 the following additional requests (identical for both defendants) for production: nos. 4, 5, and 10,

22 averring that, as to request no. 4, defendant Hickman fails or refuses to produce documents that

23 show the prison policy that requires prisoners to first discharge parole before they will be

24 committed under new names.  This is simply untrue; although defendants have posed objections

25 to request no. 4, they have nevertheless included as attachment 2, the applicable regulations in

26 response: "[n]otwithstanding these objections, see Attachment 2, California Code of Regulations,

1  title 15 section 3294.5, CDCR Operations Manual (D.O.M.) Chapter 7, Article 10 sections

2  73010, at seq., and section 81020.1."   See plaintiff's Exh. B; Opp., p. 6.  The same applies to

3  plaintiff's duplicative request no. 5.  Opp., p. 7.  Defendant Hickman, according to plaintiff, has

4  also not produced statistics or data that show all prisoners in all prisons who filed name change

5  grievances or lawsuits, which plaintiff wants for the purpose of demonstrating that there is no

6  disruption of the prison system if a name change occurs on prison records.  Motion, p. 5.

7  Plaintiff claims that within his first amended complaint he produced records of two prisoners

8  having been allowed name changes on subsequent new commitments.  Id., pp. 5-6.  Plaintiff

9  avers that any claim of confidentiality is "false" because names can be redacted and defendants

10  hypocritically release large amounts of information to the public when prisoners are charged or

11  are subject to criminal investigation.  Id., p. 6.  Plaintiff claims that in their responses to requests

12  for production nos. 13, 15, 17-18, defendant Hickman (Exh. B), like defendant Carey (Exh. A),

13  refuses to produce or disclose the prison policy which prohibits prisoner name changes on new

14  commitments if prisoners have failed to discharge parole or if parole is discharged on an earlier

15  commitment while serving a new commitment.  Id.  Plaintiff claims that there is a conflict

16  between the "misleading" responses of defendant Hickman and defendant Carey re: requests for

17  production nos. 13-18, in that defendant Carey appears to doubt that a prisoner cannot discharge

18  a prior commitment while serving a new commitment, a situation plaintiff claims is applicable to

19  him; plaintiff seeks sanctions against defendant Hickman on that basis.  Id.  However,

20  disregarding the unintentionally served material, which has been disallowed, both defendants'

21  responses are identical.  As regards the response to request no. 13, defendants aver that they have

22  provided a good faith response, notwithstanding their objections.  Opp., p. 11.  In that request for

23  production, plaintiff asks for production of "CDC policy of receiving a new name commitment

24  (CDC # & File) if the defendant discharges a prior commitment while in prison custody serving

25  time on a new commitment."  Plaintiff's Exh. A-16.  Defendants provided the following

26  response, after positing objections: "Notwithstanding these objections, see Attachment 2,

1   California Code of Regulations, title 15 section 3294.5, CDCR Department Operations Manual

2   (D.O.M.) Chapter 7, Article 10 sections 73010, et seq., and sections 81020.1.  As stated, on

3   information and belief, no such policy exists that states if an inmate is discharged from CDC,

4   they cannot legally change their name.  However, as Plaintiff was on parole for a 1988 offense

5   committed under the name Lorenzo Renell Cunningham at the time he was recommitted in 1996,

6   his 'original commitment name' remains Lorenzo Renell Cunningham."

7           Plaintiff actually appears to be asking, although somewhat confusingly, for any

8   name change policy regarding a situation, wherein parole is discharged as to an earlier conviction

9   while a prisoner is incarcerated pursuant to a later conviction, so defendants' response as to there

10  being no policy precluding an inmate discharged from CDC from legally changing his name,

11  while perhaps having been made in good faith, does not appear to be apposite.  Nevertheless,

12  defendants produced the documents containing the policy and procedures that they had

13  responsive to the request and went on to state the basis for their policy with regard to his specific

14  situation, no further discovery on this point will be compelled.  For the same reasons, no further

15  response will be compelled as to the similar request no. 14, if indeed, plaintiff seeks a further

16  response or production with respect to this request, which is not entirely clear.

17          As to request no. 15, regarding production of any federal or state law or regulation

18  which states that a newly committed prisoner who did not discharge parole in the community that

19  said prisoner "is then serving a simultaneous old/prior commitment with a new/current

20  commitment."  Notwithstanding objections raised, defendants responded that they were aware of

21  no documents responsive to the request.  The same response was posited to plaintiff's requests

22  for production nos. 16-17.  Defendants are not required to produce documents that they do not

23  have within their custody, possession or control and the motion as to the these requests will be

24  denied.

25          Plaintiff's request no. 18 seeks records of the CDC's annual costs of his

26  incarceration from 1988 to 1994, and for his incarceration from 1996-2005.  Motion, Exh. A-18.

1    The court cannot discern any relevance of such a request to this action.  The motion as to this

2    request will be denied.

3               As to responses to interrogatories numbered  5, 11, 12, and 13, plaintiff alleges

4    that defendant Hickman presents false information when he states that plaintiff, in 1994, was

5    required to seek CDC approval by way of the warden or a parole region[al] administrator prior to

6    undertaking a name change, when it was not until 1995 that Cal. Code  Civ. Proc. § 1279.5 was

7    implemented, requiring such approval for a prisoner or parolee name change via the court.

8    Motion, pp. 6-7.  Whether or not plaintiff agrees with defendant's response or believes it to be

9    either false or inaccurate is not a basis for the court to compel a further response when a

10   substantive response has been provided.  Plaintiff also takes issue with defendant Hickman's

11   "misleading" claim that he does not know precisely when or where plaintiff served his six-month

12   parole violation term, i.e., in the county jail or in state prison, even though Hickman includes in

13   attachments 1 and 2, documents detailing the parole violation.  Id., p. 7.  Defendant has provided

14   the date upon which plaintiff was arrested, July 10, 1995; the date upon which his parole was

15   revoked, July 25, 1995; the time during which he was recommitted to CDCR, April 1996;

16   defendant has conveyed, on information and belief, that at the time he was arrested, plaintiff had

17   not been discharged from parole on his 1988 conviction, which parole discharge date was May

18   26, 1997.  See defendants' responses to Interrogatory Nos. 11-13.  Plaintiff should be aware of

19   when and where he served a six-month parole violation term and could so declare or testify

20   thereto, nor do defendants dispute that such a term transpired.  Further discovery on this point

21   will not be compelled.

22              Plaintiff claims that in defendants' responses to interrogatory nos. 16 through 20,

23   they refuse to answer such basic questions as what the two names are that appear on plaintiff's

24   first commitment in 1988 and on his second commitment in 1996.  Motion, p. 7.  In these

25   interrogatories, plaintiff also asks whether at the time of his April, 1996, commitment, he was

26   serving a dual prior and current commitment on his 1988 and 1995 [sic] cases, which he wants to

12

know to determine if his legal name change prior to the latter commitment permits his name

change on all prison records.  Id.  He also asks whether the second commitment terminates the

1988 commitment and whether since defendants, according to plaintiff, conclude that his first

commitment was discharged by May of 1997, while he was serving his second prison

commitment, why he cannot also discharge the name of Cunningham for the remainder of the

second term, but defendants responses, he contends, are evasive because they do not

acknowledge the second commitment (People v. Ashanti) in 1995 (or 1996), but state instead that

the only controlling case is the 1988 People v. Cunningham commitment.

As to interrogatories 16-18, notwithstanding objections interposed, defendants

provide substantive responses.   The court cannot compel more, despite the fact that plaintiff

takes issue with those answers.  As to interrogatories 19-20, plaintiff frames questions which are

not sufficiently intelligible and assumes facts not established as true, for example, that plaintiff

continued to serve the "judgment" under People v. Cunningham simultaneous with the

"judgment" under People v. Ashanti.  Plaintiff's motion to compel further responses to these

questions will be denied.

Plaintiff also complains about the defendants' responses to the interrogatories that

he propounded to them numbered 21 through 25.  Motion, p. 8.  He contends that by those

questions he seeks answers to "legal questions" concerning whether or not the CDCR has a dual

commitment policy such that the prison bills the state and taxpayers for such would-be dual

commitments.  He states that he is entitled to records (although a request for records should not

be made in the context of an interrogatory).  He states that any alleged billing for a dual

commitment should come to light so that various federal and state agencies can launch

investigations or prosecutions for any such illegal action.  Plaintiff also seeks information that he

states is already part of the record with regard to inmates Slatten/Garcia and inmate Crisp/Jihad

about whom he inquires whether any disruption occurred when the CDC changed these inmates'

prison I.D. numbers and case files/records, thus allowing them to use their second names on their

1    second commitments.  With regard to any questions about staff, he is not seeking, he states,

2    specific information regarding staff name changes but only whether CDCR was disrupted when

3    and if legal name changes were made.  He also contends that any sensitive material could be

4    redacted and that defendants have not sought any protective order.  Motion, pp. 9-10.  With

5    regard to his question regarding the specific inmates, plaintiff's question is compound, as

6    defendants assert, but their primary objection is based on claims of confidentiality and privacy.

7    Plaintiff could have sought to affirm that these individuals have been allowed to have their

8    names changed on prison records, etc., and then followed with a question as to the circumstances

9    and provisions under which these names had been changed.  It is possible that the court may then

10   have directed, despite defendants' assertions based on the rights of privacy of staff and inmates

11   and based on state statutes, etc., that defendants fashion a protective order under which the

12   sensitive portions of any such responsive information could have been redacted.  But the court

13   will not frame plaintiff's interrogatories for him.  Moreover and more importantly, whether

14   defendants have arbitrarily applied prison regulations regarding a name change to plaintiff and

15   his prison records does not depend on whether or not they have done so with regard to any other

16   inmate.  In addition, plaintiff goes rather far afield when he seeks information as to prison

17   personnel/staff name changes.  The motion as to these requests will be denied.

18          Plaintiff also claims that defendants' responses to his requests for admission, nos.

19   4-7, 9-11, 13-14, 16-17, 19-22, 24-25 at Exh. D are evasive in refusing, inter alia, to admit the

20   legality of his name change, statements concerning dual commitments, parole violations and

21   dates served, policies with regard to discharging parole for name changes and prison policies

22   related to charging the state for dual/multiple commitments or as to disruption related to inmate

23   and staff name changes on prison records.  Motion, p. 10.  Again, plaintiff moves for sanctions.

24          In request for admission no. 4, plaintiff asks defendants to admit or deny that his

25   name was legally changed in a Los Angeles County Superior Court from Lorenzo Cunningham to

26   Askia Ashanti in In re: Cunningham, Case No. BS-028939.  Plainly, plaintiff has access to the

14

1   documentation supporting the change of his name.  In the response, after setting forth objections,

2   each defendant provides the following substantive response: "[n]otwithstanding these objections,

3   on information and belief, admit Plaintiff changed his name in the Los Angeles County Court,

4   but as Responding Party is without information or belief that this change was made legally,

5   particularly with respect to California Code of Civil Procedure § 1279.5(b) and (c), and

6   California Code of Regulations, title 15, section 3294.5, he denies at this time that the name was

7   changed legally."   Defendants have admitted the name change was made in court; the fact that

8   they are not prepared to admit that any such change was in compliance with regulations

9   governing name-changing by prisoners and parolees is a position which they cannot be

10   compelled to refute.

11          As to plaintiff's objections to defendants' responses to the other requests for

12   admission he has raised, some are improperly phrased as interrogatories, rather than requests for

13   admission (such as request no. 6); moreover, as to that request, whether as of 1995, inmates and

14   parolees were required to seek approval before seeking a legal name change from a CDC warden

15   or regional parole administrator, pursuant to CDC policy or Cal. Code Civ. Proc. 1279, plaintiff

16   does not need an admission or denial from defendants.  Such questions can better be resolved by

17   resort to the statute or regulation itself, rather than receiving defendants' information or belief on

18   the point.  Plaintiff objects that in response to request for admission no. 7, defendants admit that

19   in 1994, plaintiff was required, both by  Cal. Code Civ. Proc. § 1279.5 and Cal. Code Regs. tit.

20   xv, § 3294.5, to receive approvals for changing his name that was, in fact, not required in that

21   year, at least pursuant to Cal. Code Civ. Proc. § 1279.5(b) and (c).  Again, assuming its

22   relevance, whether plaintiff is correct or not is best resolved by resort to the applicable statute.

23   Defendants have provided substantive responses to plaintiff's requests for admissions (9-11)

24   relating to his six-month parole violation term in 1995.  Defendants admit that he was not still

25   serving his parole violation term in April of 1996, when he was committed again to CDCR on a

26   new conviction.  They deny that his parole had expired on the 1988 conviction simply because

1  the sentence for his parole violation had ended in January of 1996, averring that his parole

2  discharge date was on May 26, 1997.  Plaintiff's objections to these requests are without

3  foundation.  Request nos. 13-14 are phrased as interrogatories, not requests for admission.

4  Defendants' response to request no. 16 is a substantive one admitting that the name "Ashanti,

5  Askia" appears as the name on the abstract of judgment of April 17, 1996 but denying that this

6  was plaintiff's original commitment date based on certain regulations that they deem applicable.

7  Plaintiff also objects to defendants' response also because he does not agree with the substantive

8  response to request nos. 17.  As to requests nos. 19-22, 24-25, these are interrogatories and not

9  properly framed as requests for admissions.  Plaintiff's motion to compel further responses to his

10 requests for admissions will be denied.  As plaintiff has provided an insufficient basis for the

11 court to compel further discovery from defendants, his request for sanctions is not well-founded

12 and will be denied.

13            Accordingly, IT IS ORDERED that:

14            1.  Plaintiff's motion to compel discovery, filed on September 14, 2005, is denied

15 as moot;

16            2.  Plaintiff's motion to compel further discovery and for sanctions, filed on

17 December 12, 2005, is denied;

18            3.  The documents inadvertently produced by defendants, identified above, must

19 be returned to defendants within thirty days, if plaintiff has any of the documents within his

20 custody, possession or control; in any event, plaintiff is not to refer to or rely on the inadvertently

21 produced documents in any future filing;

22            4.  Pursuant to Fed. R. Civ. P. 25(d), in this suit against defendants in their official

23 capacities for prospective injunctive relief only, James Tilton is substituted in as defendant in the

24 place of defendant Woodford and/or defendant Hickman.

25 DATED: 9/19/06                              /s/ Gregory G. Hollows

26 GGH:009 - asha0474.mtc                      _____
                                              UNITED STATES MAGISTRATE JUDGE